## CURTIS VS. THE CHICAGO & NORTH-WESTERN RAILWAY COMPANY.

Where one contracted with the freight agent of a railroad company for the transportation of goods upon a particular day and train, it is no evidence of a subsequent rescission of such contract, that he was subsequently informed by another person "in the employ of the company" that the goods could not be sent by that train if the cars should be full, it not appearing that such person was a freight agent of the company.

Where potatoes were left by the plaintiff at a certain depot under a contract for their transportation to Chicago on the same day, and they were not shipped until the next day, it was not error, in an action for injuries to the same by freezing alleged to have occurred *in transitu* in consequence of such delay, to permit a witness to testify as to their condition when seen by him in the warehouse of the consignee at Chicago, a week or more after they were shipped. It was a question to be determined upon the whole evidence, whether the potatoes were frozen *in transitu* or subsequently to their arrival at Chicago.

Nor was there any error, in such a case, in allowing the witnesses to give their opinion of the state of the weather on the day the potatoes were shipped, and whether it was sufficiently cold to freeze them while in the cars; or as to the state of the weather during the time they were in store at Chicago, and whether it was sufficiently cold to freeze them in the store-room.

APPEAL from the Circuit Court for *Jefferson* County.

This action was commenced in justice's court. The com-complaint alleges that on the 12th of January, 1862, at the station on its railroad in the village of Fort Atkinson in said county, defendant received a certain quantity of potatoes in bags, in good order, of the value of &c., the property of the plaintiff, which it agreed to convey to Chicago, Illinois, on that day, and by the next train going from Fort Atkinson to Chicago; that said day was mild and warm, so that potatoes would not freeze in the open air or in the cars and could have been safely transported as agreed, but that defendant did not transport them on that day or by the next freight train, but kept them at Fort Atkinson until the weather became cold, and on some day thereafter transported them to Chicago, by reason of which they were frozen and spoiled, to the plaintiff's damage $15.—Answer, a general denial.

On the trial before the justice, the plaintiff, as a witness in his

own behalf, testified: "I made an arrangement with Winslow & Hovey to ship 29 bushels of potatoes to Chicago. Left the potatoes at the depot on the 12th of February, (?) 1862, about 11 o'clock, A. M. Charles Barron is the agent. I asked him if he would send them on that day; he said he would. We had the conversation in the street; he said he should be in the office in a short time; I told him Winslow would give him directions where to ship the potatoes to; Barron said he would send them that day. The weather that day and night was mild—not cold enough to freeze out of doors. I left the potatoes with Butler, who said he would send them if he could think. The weather changed the next day." A. Winslow, for the plaintiff, testified as follows: "Plaintiff was at our store and said he had some potatoes to sell. We told him he could have our bags to send them to Chicago, and we would charge him nothing. I saw the agent, who said he would send them that day. Do not know when the potatoes were sent. Barron said the train could not stop on that day, he had to ship them on the next day." Wm. F. Hovey, for the plaintiff, said: "I saw the potatoes in our bags in Chicago, in care of Dow & Co., a week or more after the shipping." *Question*: "What was their condition at that time?" An objection by defendant to this question was overruled. *Answer*: "They were in a very wet and soft condition." *Question:* "What was their value in that condition?" *Answer:* "No value." *Question:* "Would they have frozen in the building of Dow & Co. when you saw them?" Objection overruled. *Answer:* "Should judge they would not freeze. It was a wood and brick building, half a mile from the station of the *Chicago & N. W. Railway Co.* I have no knowledge of Dow & Co. having any other building." *Question:* "What was the value of this quality of potatoes at that time in Chicago?" Objection overruled. *Answer:* "Dow & Co. told me they were worth 40 cents." The plaintiff, being recalled, was asked, "What was the price of potatoes at Chicago at that time?" *Answer:* "From 35 to 40 cents per bush-

el."—Charles Barron, for the plaintiff, said: "The potatoes were shipped in the name of Winslow & Hovey to Dow & Co. Freight trains got into Chicago about four o'clock the next morning. They were shipped in common box cars." *Question :* "Would potatoes freeze in a cold night in that kind of cars in going from here to Chicago?" Objection overruled. *Answer :* "I think it would have to be a very cold night. It is my impression that it was a cold night. The consignors should have been informed that there was no room in the cars to ship the potatoes. They were shipped on the next regular freight train."—J. Butler, for the plaintiff, said: "I was in the employ of the *Railway Company* last February; recollect *Mr. Curtis* coming there with a load of potatoes. He wanted to know if they could be shipped that day. I told him I could not tell him; I would put them aboard where we put all the way freight. Could not get them aboard when the train got along; the cars were all full. Charles Barron was not there at the time. It was very moderate weather when the potatoes were left. When shipped, I think the tops of the bags were frozen." There was some further evidence, which it is not important to state. The justice rendered judgment in favor of the plaintiff and against the defendant, for $14.89 damages; and the defendant appealed to the circuit court, where the judgment of the justice was reversed, and the plaintiff appealed.

*L. B. Caswell,* for appellant.

*Enos & Hall,* for respondent:

1. The conversation with Butler fairly apprised the plaintiff that his potatoes would not be shipped that day if the cars of the next train were full. The potatoes were delivered to and accepted by the defendant after this conversation, and on the terms proposed by Butler. 2. The justice erred in allowing Hovey to testify to the condition of the potatoes in Dow & Co.'s warehouse in Chicago, a week or more after they were shipped. 3. He also erred in allowing witnesses to give their

opinions as to whether the potatoes froze in Dow & Co.'s warehouse, and whether they froze upon the cars. *Jefferson Ins. Co. v. Cotheal*, 7 Wend., 72 ; *Morehouse v. Mathews*, 2 Coms., 514 ; *Merritt v. Seaman*, 2 Seld., 168 ; *Clark v. Baird*, 5 id., 183.

*By the Court*, Dixon, C. J.   It does not appear that the witness Butler was an agent of the railroad company, and authorized to contract for the transportation of freight.   He testifies merely that "he was in the employ of the company."   His employment may have been that of a common laborer, with no authority whatever to enter into contracts.   On the other hand it does appear that Barron was the freight agent, and that he contracted with the plaintiff to send forward the potatoes on the day they were delivered at the depot.   This disposes of the first point of defendant's counsel, that the contract with Barron was rescinded by one subsequently entered into with Butler.

We see no error in allowing the witness Hovey to testify to the condition of the potatoes when seen by him in the warehouse in Chicago.   It is true that they might have been frozen after they reached Chicago and before they were seen by the witness, but that was a question for the justice to determine after hearing the whole evidence.

Again, we see no error in permitting the witnesses to give their opinion of the state of the weather on the day the potatoes were shipped.   It is true that, in general, witnesses are not allowed to give their opinions except upon questions of science, trade, and some others of the same nature, and then they must be adepts.   But upon a matter of such common experience as the state of the weather, whether cold or warm, and the effects likely to be produced by it upon fruit or vegetables when improperly exposed, we think the evidence savors more of *facts* than of *conjecture*, more of *knowledge* than of mere *opinion*.   It is like the opinion of experienced witnesses upon questions of value, which is always allowable.   Besides, But-

ler testifies that he thinks the tops of the bags were frozen at the time they were shipped.

Upon the whole, we are of opinion that the judgment of the circuit court should be reversed, and that of the justice affirmed.