Hon. JOHN PIERPOINT, Chief Judge.
Hon. LOYAL C. KELLOGG, }
Hon. BENJAMIN H. STEELE, } Assistant Judges.

---

## JOEL H. PEASE *v.* BENJAMIN F. SABIN.

### *Warranty. Sale.*

The principle seems to be now well settled, that when the manufacturer of an article sells it for a particular purpose, the purchaser making known to him at the time the purpose for which he buys it, the seller thereby warrants it fit and proper for such purpose and free from latent defects.

The plaintiff's evidence tended to show that he purchased of the defendant a quantity of cheese at a sound price, without examination, for a foreign market, which purpose was made known to the defendant at the time, and that the cheese when delivered were maggoty. On trial the plaintiff requested the court to charge the jury that when produce, requiring skill in the manufacture thereof, as in the case of the manufacture of butter and cheese, and especially when the

same was subject to latent defects that could not be discovered by the purchaser, was sold by the manufacturer thereof to a dealer for a special purpose, then made known to the seller, and a sound price was paid for the article, the law would imply a warranty that the article was fit for such purpose. *Held,* that the plaintiff was entitled to a charge substantially as requested.

ASSUMPSIT declaring in four counts. The first count declared on a contract for the purchase of sixty boxes of cheese with warranty of soundness in the quality, and also a warranty of the amount of tare of the boxes, and alleged breach of warranty. The second count declared on a contract for the purchase of thirty cheeses, and a subsequent delivery of eighteen cheeses upon said contract, and alleged neglect and refusal to deliver the remaining twelve. The third and fourth counts declared substantially on the contract mentioned in the said first and second counts. Plea, the general issue, and trial by jury, September Term, 1865, ALDIS, J., presiding.

The testimony of the plaintiff tended to show that on or about the 25th of August, 1862, the plaintiff, being a produce dealer, called upon the defendant at his residence in Georgia, who was a farmer and kept a dairy, for the purpose of purchasing his, the defendant's, cheese; that it was about the hour of sunset when he called, and found the defendant milking his cows; that after the milking of the cows was finished he and the defendant went to the cheese house; that they found the cheese were greasy; that some of them were piled top of others and could not be examined without moving those on top; that the shelves were so near together that one could not well pass between them without rubbing one's clothes against the cheese, and that it was so dark in the cheese house that the defendant procured a light in order that the plaintiff might examine said cheese, and that in consequence of the lateness of the hour and the situation of the cheeses as above stated he did not examine them particularly, but asked the defendant if the cheeses were sound and in good condition, and if he had been troubled with skippers any, and that the defendant replied that they were sound and that he had not been troubled with skippers; whereupon he told the defendant that he he would give him seven cents per pound, it being the price the defendant asked, and it being the then highest going market price offered for sound cheese, for as many as he, the defendant, would

deliver to the plaintiff on the Tuesday following at the freight depot at St. Albans, sufficiently cured to be shipped, as he wanted them, as he then told the defendant, to fill an order he then had for a quantity of cheese to be shipped to a foreign country. The plaintiff further showed that the cheeses were not delivered until Wednesday, and were received and marked by the station agent at St. Albans; and introduced evidence tending to show the cheeses were unsound and maggoty when they arrived in Boston four days after they were delivered at St. Albans, and were unfit for the purpose for which they were purchased, and that unsoundness in cheese from maggots is a latent defect.

The defendant's evidence tended to contradict that of the plaintiff, except that the plaintiff did purchase the cheese of the defendant for a foreign market.

The request of the plaintiff to the court to charge the jury is set forth in the opinion, and the charge in respect thereto.

The court also charged the jury that where defects existed in articles so situated and placed that any examination was impossible or impracticable, the law might imply a warranty, but the fact that the room was dark and that the cheeses were piled some of them top of others, and that they were closely crowded in the room and were very greasy, so as to make it inconvenient to examine them or difficult to get around among them without soiling one's clothes, would not constitute such a state of facts as would warrant the plaintiff in not making a careful examination of the cheese, and that the law would not imply a warranty from such a condition of things upon the ground of its being impracticable to examine the cheese.

The jury rendered a verdict for the defendant.

To the portions of the charge of the court above set forth, and to the refusal of the court to charge as requested, and the ruling of the court excluding certain evidence not material to be stated, the plaintiff excepted.

*Dewey & Noble,* for the plaintiff, maintained, that there was error in the refusal of the court to charge as requested, and cited 1 Pars. Cont. 469; *Brown* v. *Edginton,* 2 M. & G. 279; *Beal* v. *Olmstead,* 24 Vt. 114; Chitty's Cont. p. 391; *Jones* v. *Bright,* 5 Bing. 533; *Lane* v. *Fidgeon,* 6 Taunt. 108.

*Buck & Royce,* for the defendant, maintained, that the rule of law·

expressed in "*Caveat Emptor*," applies to purchasers of provisions except when they are sold by dealers for immediate domestic use. Story on Sales, § 373 and note; Chit. on Cont. 836; *Emerson* v. *Brigham*, 10 Mass. 199; *Moses* v. *Mead*, 1 Denio, 378; *Burnby* v. *Ballett*, 16 Mees. & W. 644.

The opinion of the court was delivered by

PIERPOINT, Ch. J.   The questions presented by the exceptions arise under the first count in the declaration, in which the plaintiff declares upon a warranty.

The plaintiff requested the court to charge the jury that "where produce requiring skill in the manufacture thereof, as in the case of the manufacture of butter and cheese, and especially where the same were subject to latent defects that could not be discovered by the purchaser, was sold by the manufacturer thereof, to a dealer for a special purpose, then made known to the seller, and a sound price was paid for the article, the law would imply a warranty that the article was fit for such purpose." The court declined so to charge the jury, and charged the reverse. In this we think there was error.

The principle seems to be now well settled by the authorities, that when the manufacturer of an article sells it for a particular purpose, the purchaser making known to him at the time the purpose for which he buys it, the seller thereby warrants it fit and proper for such purpose, and free from latent defects. The law therefrom implies a warranty of the fitness of the article for the purpose. Certainly so, if the unfitness of the article for the particular purpose, is occasioned by any want of skill or care, or is the result of any defect, from any cause, in the process of its manufacture; that is, he warrants it to be as fit and suitable for the purpose indicated, as any good, sound, well made article of its kind would be.

This principle is fully discussed and decided in *Jones* v. *Bright*, 5 Bing. 533, and in other cases referred to by council in the course of the argument, and which it is not necessary to cite here.

In this case the cheese which is the subject of controversy, was manufactured by the defendant. It was purchased by the plaintiff for the purpose of being shipped to a foreign country, and that purpose was made known to the defendant at the time.

The evidence on the part of the plaintiff tended to show, that at the time of the sale of the cheese by the defendant, many of them were unsound and defective by reason of their being infested with maggots, of which unsoundness the plaintiff was ignorant. No question is made but what if this unsoundness existed in fact, it resulted from a want of care and attention on the part of the manufacturer in manufacturing, and bringing them into a marketable condition. The evidence also tended to show, that the defect, if it existed, was a latent one, as the defendant himself swore that he was ignorant of it, and that it did not in fact exist. If the defect existed and the defendant was ignorant of it, it is not probable that it could have been discovered without a very critical examination.

The plaintiff's evidence also tended to show, that this defect rendered the cheese unfit to be sent to a foreign market, and it would seem to render it equally unfit for any other market, either in the cities of this country, or for sale at home ; but however that may be, the evidence tended to show that it was unfit for the purpose for which it was bought, and that the defect resulted from the fault of the defendant in its manufacture. Thus tending to show a case clearly within the rule heretofore laid down, and entitled the plaintiff to a charge to the jury substantially such as he requested.

Other questions have been discussed on the hearing, but as the conclusion to which we have come upon this point, results in a reversal of the judgment, and a new trial, we do not pass upon them.

Judgment reversed and case remanded.