## LEOPOLD and others vs. VAN KIRK and others.

*Implied warranty of manufactured article.*

1. Where the manufacturer sells an article for a particular purpose, of which he is notified at the time by the purchaser, he warrants it as free from latent defects rendering it unfit for that purpose.
2. Thus, where defendants, who where pork-packers, sold plaintiffs hams, knowing them to be purchased for the Lake Superior trade, there was an implied warranty that they were as suitable for that trade as any good, sound, well-prepared hams would be, except, perhaps, so far as they informed plaintiffs to the contrary.
3. Such warranty, however, relates only to the condition of the hams *at the time of the sale;* and if they were found to be unsound at the end of the voyage, it would be for the jury to say whether that condition resulted from latent defects existing at the time of sale or from causes subsequently arising, since the latter would not be covered by the warranty.
4. Evidence of an express warranty, to the effect that defendants, "knowing that the hams were purchased for the Lake Superior trade, warranted them," does not show any other liability on their part than that involved in the implied warranty as above stated.

APPEAL from the Circuit Court for *Milwaukee* County.

The complaint alleges that "plaintiffs are partners in business, etc., and are shippers and forwarders to ports and places upon Lake Superior, and purchasers upon commission of supplies and provisions to be used and vended in the mining regions of Lake Superior," and that the defendants (partners in business at Milwaukee, as packers of meat and provisions), at the request of plaintiffs, about November 7th, 1868, at Milwaukee, undertook to furnish plaintiffs cured and pickled hams of their own curing and packing, "properly preserved and packed for said mining region of Lake Superior, and to pack them properly for the voyage there," and that the hams should "keep sound and fit for use and sale a reasonable time;" that plaintiffs relying on this promise bought the hams; and that the same were not of good quality, nor fit for that purpose, and were not properly packed and

put up, and did not keep good, but were wholly worthless, etc.   Answer, a general denial.

At the trial, *Mr. Leopold* testified that when the agreement to purchase was made with *Mr. Roddis,* one of the defendants, the latter was told that the hams were wanted for the Lake Superior trade, and replied that every package of them was warranted.   *Mr. Roddis* testified that he informed *Mr. Leopold* at the time that they had no hams on hand, but that they would undertake to pack the quantity wanted by plaintiffs, so that they should be ready for shipment at the time when plaintiffs required them (which was about one week from the date of said agreement), and that the same should be packed in their (defendants') "usual good style."   The other evidence need not be stated.

The court instructed the jury, among other things, that if *Mr. Leopold* informed *Mr. Roddis* that he desired to purchase hams for the Lake Superior trade, and the reply of *Mr. Roddis* was that he would furnish them and put them up in his usual good style and manner, then there was an implied warranty that the articles furnished should be good, merchantable articles, and fit for the Lake Superior trade; and if such an implied warranty was sustained by the proof, then the question how the hams became spoiled was not one for the consideration of the jury.

Verdict for the plaintiffs; new trial denied; and defendants appealed from a judgment on the verdict.

*Finches, Lynde & Miller,* for appellants, argued, among other things, that where parties have *expressed* the agreement by which they mean to be bound, no other agreement would be *implied.*   *Dickson v. Zizinia,* 70 E. C. L. 600; *Cunningham v. Hall,* 4 Allen, 275; *Walton v. Cody,* 1 Wis. 430; *Deming v. Foster,* 42 N. H. 165.

*Emmons & Van Dyke,* for respondents, contended that in executory sales, there is an implied warranty that the article shall be merchantable (Chitty on Con., 7th Am. ed. 450; Addison on Con. 229 et seq.; Parsons

on Con. 466 et seq.; *Howard v. Hoey*, 23 Wend. 351; *Moses v. Mead*, 1 Denio, 385); that on a sale for a particular purpose, the seller is understood to warrant the article reasonably fit for such purpose (Chitty on Con. 451; Addison on Con. 230; 1 Parsons on Con. 469, 470); and that even if there was an express warranty as to the manner of packing, that did not exclude an implied warranty that the hams should be merchantable and fit for use in the Lake Superior trade. *Bigge v. Parkinson*, 7 Hurl. & Norm. 955; *Getly v. Rountree*, 2 Chand. 28; *Bird v. Mayer*, 8 Wis. 362; *Fisk v. Tank*, 12 id. 276; *Ketchum v. Wells*, 19 id. 25; *Smith v. Justice*, 13 id. 600.

DIXON, C. J.   What was the meaning of the express contract that the defendants would pack the hams in their usual good style and in a proper manner for the Lake Superior trade, as testified by the defendant *Roddis*, or of the warranty, as testified by the plaintiff *Leopold*, that, knowing the hams were purchased for that trade, the defendants warranted them ?   Did the express contract or the warranty mean, ordinary and proper care being observed in their shipment and transportation, that the hams should in every other event be in a sound condition and fit for use when they reached their place of destination on Lake Superior ?   Was it the intention that the defendants should assume this responsibility, or were they to be responsible only that the hams were in a sound and suitable condition for the voyage at the commencement of it, or at the time of delivery to the plaintiffs ?   There is or may be a most material difference in the effect of these obligations, or the extent of the liability incurred by them.   It is not impossible in the nature of things that, even with the utmost care and watchfulness for their safety and preservation, causes might have intervened after delivery to the plaintiffs, and pending the transit, which rendered the hams unwhole-

some and unfit for use; and those causes may not have been traceable to, or may have been wholly unconnected with, any defect existing in the quality of the hams or in the manner of packing and cure at the time of delivery. It may be said, and may be true, that the intervention of such causes was quite improbable; but it is enough to illustrate and sustain the materiality and truth of the proposition, if by possibility such causes might have existed, and might have produced the injuries complained of. The operations of nature in such cases are often most hidden and mysterious, and we cannot assume that no such causes could have intervened; nor can we know what the jury would have said, had the question been submitted to them upon the testimony which was before them, but is not before us. It is material, therefore, to inquire into the construction and true meaning of the contract or warranty in this respect, or whether it related to the quality and condition of the hams at the time of delivery to the plaintiffs, or at the time they should arrive at the port of destination on Lake Superior; for upon this the correctness of the instructions of the court below to the jury principally depends. And in determining this question we are to be guided by the language of the contract, or what was said between the parties, alone, as no usage of trade or custom of dealers in such cases, by which the contract is to be governed or interpreted, was shown.

Our opinion is, that the express contract or warranty, if it be properly so called, is the very same which the law would have implied, or did imply, under the same circumstances, unless it was modified by the fact that the plaintiffs knew the hams were freshly packed, and therefore received them subject to any risks or defects arising from that cause, a point not necessary now to be decided, and which we do not decide. The general rule of law with respect to implied warranties is well settled, that when the manu-

facturer of an article sells it for a particular purpose, the purchaser making known to him at the time the purpose for which he buys it, the seller thereby warrants it fit and proper for such purpose, and free from latent defects. This rule has been applied to cases like the present, where the article sold was provisions designed for a foreign market, and the purpose of the buyer was made known to the seller at the time. It was so applied in *Pease v. Sabin*, 38 Vt. 432, where the sale was of a quantity of cheese by the party who manufactured it, and he was informed that such was the purpose of the buyer. The court held, and we think correctly, that upon a sale under such circumstances, for a round price, and without examination by the purchaser, and especially where the article sold was subject to latent defects which could not be discovered by him, the law would imply a warranty that the article was fit for the special purpose for which it was bought. And see also, *Bigge v. Parkinson*, 7 Hurlstone & Norman (Exch.), 954. And the same rule applies here. The defendants were engaged in the preparation or manufacture and sale of an article of provisions which required skill and experience in its production, and which was subject to certain latent defects; and when applied to by the plaintiffs to furnish or sell them the article for a specified purpose, the law implied that they warranted it to be as fit and suitable. for the purpose named, as any good, sound, well prepared article of its kind would be, except, perhaps, so far as they may have informed the plaintiffs to the contrary. But this warranty related to the condition of the article at that time, and did not cover any future condition of unsoundness proceeding from any cause or defect not then existing, or which afterwards supervened. It did not have reference to the condition of the article at the end of the voyage, or in the foreign market, provided it became damaged or unsound from any cause or defect origi-

nating after the sale and delivery. To show a breach, therefore, of such warranty, the jury should be satisfied from the evidence that it was defective at the time of sale, and should be instructed that they must so find.

And this, we think, was the precise character of the warranty shown or claimed to have been made between these parties It had relation to the condition of the hams at the time of sale, and not to their condition at the place to which they were to be transported, unless such latter condition originated in defects existing and unknown to the plaintiffs when the sale took place.

The court below, among other things, instructed the jury as follows: "I shall direct you, gentlemen, on the question of law in this suit, that is, as I understand the law, that if *Mr. Leopold* went to *Mr. Roddis*, and informed him that he desired to purchase 121 tierces of hams for the Lake Superior trade, and the reply of *Mr. Roddis* was, that he would furnish them, and put them up in his usual good style and manner, there was an implied warranty there, that the articles furnished should be such as the warranty called for, and that would be good merchantable articles, and fit for the Lake Superior trade. If you are satisfied from the evidence that such an implied warranty is sustained by the proof, then how the hams became injured or spoiled is not a question for your consideration." This instruction was excepted to by the defendants, and the last sentence or proposition was clearly erroneous according to the views above taken. The evidence, so far as the bill of exceptions discloses it, related to the spoiled and unsound condition of the hams after they arrived at Lake Superior; and whilst it may be true that the jury might or would have found that this proceeded from defects existing at the time of delivery to the plaintiffs, yet the instruction took from them the consideration of that

question. It also took from them the consideration of the other question, intimately connected with that, and which in reality amounts to the same thing, that is to say, whether the hams might not have been injured from some cause arising after they came into the possession of the vendees. The jury were told, if they found the facts from which the warranty was implied, then how the hams became injured or spoiled was not a question for their consideration. It was, as we have seen, a most important and material question to be considered and determined by the jury; and for this error the judgment must be reversed, and a *venire de novo* awarded.

*By the Court.*—Let judgment be so entered.