LEOPOLD and another vs. VAN KIRK and others.

(1) *Variance.* (2) *Evidence.* (3, 4) *Evidence—Testimony of Experts.* (5, 6) *Instructions—Express and implied Warranty.* (7, 8) *Instructions to Jury—Reversal of Judgment.*

1. Complaint for breach of warranty of " cured and pickled hams " sold by defendants to plaintiffs. Proof of a sale of " fresh-packed hams." It appearing that defendants were not misled to their prejudice by the variance, *Held,* that it was properly disregarded.

2. A witness may testify in general terms as to the temperature of the place of storage of goods (such as hams) liable to be injured by heat, and the jury may find from such evidence whether the goods were properly stowed and cared for, although no means were used by the witness or others to ascertain the *exact* temperature.

3. A witness who is an *expert* in the curing and care of meats may testify whether hams prepared in a certain described way, and shipped for transportation to a specified point, if properly stowed and cared for " ought to have borne transportation " to that point.

4. In the examination of experts, considerable latitude of inquiry must be permitted, and such examination (whether made for the purpose of obtaining the witness's opinion upon all the facts disclosed, or of ascertaining his skill or competency to give such opinion), is not to be limited by narrow and stringent rules.

5. It appears that it was expected and customary for " fresh-packed hams " to be carried, in the latter half of November, by vessel from Milwaukee to Lake Superior, without receiving any injury from the transit, and to arrive at their destination in a sound and wholesome state, provided they were properly prepared and packed; and plaintiffs purchased hams for such transportation from defendants, who knew the fact, and sold and delivered the hams for that purpose. Plain

tiffs testified that they informed defendants that they wanted good hams for the Lake Superior trade, and defendants answered that all their hams "were warranted," or "were warranted to be good." *Held*, that it was not error to instruct the jury that the warranty *implied* by law, in such a case, was the same as the *express* warranty thus testified to.

6. In such a case, unsoundness in the hams from any cause arising subsequently to the sale and delivery, and not traceable to any defect existing at that time, would not create any liability on the part of the seller.

7. An instruction that, notwithstanding evidence of defendants' usual manner of packing hams in the period during which those here in question were packed, yet, if the jury found from the evidence that the hams in controversy escaped—whether by accident or otherwise—the observance of such usual mode, defendants were liable for any non-observance "—*held* not to be error, although there was no *direct* evidence that the hams in question were not packed in defendants' usual manner; there being *circumstantial* evidence from which that conclusion might have been drawn by the jury.

8. A judgment will not be reversed for erroneous instructions where it is clear that the appellant could not have been prejudiced thereby.

APPEAL from the County Court of *Milwaukee* County.

Action for the breach of a warranty on a sale of hams. The complaint alleges that about the 7th of November, 1868, at Milwaukee, the defendants undertook to furnish to plaintiffs " *cured and pickled hams,*" of their own curing and packing, properly preserved and packed for the mining region of Lake Superior; and to pack them properly for the voyage there, and to remain and keep sound and fit for use and sale a reasonable time;" that the hams furnished under such contract were not of good quality nor fit for that purpose, and were not properly preserved and packed, and did not keep sound and fit for use, a reasonable length of time.

At the trial, two of the plaintiffs testified that in November, 1868, they went to see *Mr. Roddis*, one of the defendants, and told him they wanted 65 tierces of such hams as he had sold a few days previously; that he replied that those which defendants had were promised, but that, after some hesitation, he

consented to fill the order; that they told him particularly that they wanted the hams for their Lake Superior trade, and they must be good, because they could not be replaced, it being the last trip of plaintiffs' boat; and he replied, "Every tierce of our hams which we sell is warranted." On cross-examination, one of them testified that they told *Roddis* they wanted *sweet pickled hams.*

The plaintiffs further proved that the hams purchased were shipped on board of their propeller, which was partially loaded at Chicago with provisions and live stock; that they arrived at Lake Superior in about eight or nine days, and, when opened, soon after, many of them were found to be spoiled, and they were afterward returned to the defendants.

The testimony as to the place where they were stowed on board the propeller, and its temperature, sufficiently appears in the opinion of the court.

Cudahay, the inspector of provisions appointed by the board of trade of Milwaukee, testified as to the bad condition of the hams inspected by him after their return. Several questions put to him as an expert, under defendants' objections, to elicit his opinion as to the cause of their bad condition, appear in the opinion of the court. He also testified that it took about sixty days to cure a ham, and that there was a wide difference between fresh-packed hams and cured hams, as to the care and attention required to keep them in good condition.

On the part of the defense, *Mr. Roddis* testified that in the negotiation for the purchase he informed the plaintiffs that defendants had no cured hams, but were putting up hams from day to day, and if they filled his order the hams would have to be packed between that time and the time of delivery, which was three days subsequent; and that they made no objections to receiving hams so packed.

There was also evidence as to defendants' usual manner of packing hams, and the care used in selecting and packing the hams in question; as to the effect of a high temperature upon

hams so packed; and as to the large number of live animals upon the propeller in which they were transported to Lake Superior, creating animal heat which might have affected such hams.

The substance of the charge to the jury is given in the opinion, except the fifth point asked by defendants, referred to therein, as given, in a modified form, which is as follows:

"If the jury find from the evidence that the defendants agreed to sell fresh-packed hams, and the plaintiffs, knowing that they were to receive fresh-packed hams, gave the order therefor and the defendants put up the said hams in their usual, ordinary style of putting up fresh-packed hams, and delivered the said hams in packages or tierces, branded and marked, showing the date of the packing, then, and under such circumstances, said defendants are not liable to the plaintiffs for any *unsoundness therein*, occasioned by any act *or neglect of the plaintiffs* after their delivery."

The jury returned a verdict for the plaintiffs; and the defendants appeal from the judgment.

*Finches, Lynde & Miller*, for appellants:

The questions put to Cudahay were clearly objectionable. The first one assumed that the hams had been properly cared for by the plaintiffs, which assumption was not supported by the evidence. It was a question which the jury were more competent to settle than the expert. It was, in fact, *the* question they were to try. The second question was too remote and speculative in its character. There was nothing in the case up to that time to justify it. *Lincoln v. R. R. Co.*, 23 Wend., 425. The witness did not see the hams until May, 1869, five or six months after the sale. The third question makes the witness settle the real *contested fact* in the case. It is not the province of an expert to draw deductions from facts. 45 Maine, 392; 2 Abb. Dig., 657; 23 Wend., 425; 19 id., 569; 7 id., 72; 24 id., 668. 2. The opinion of the witness was not based upon his knowledge of facts, nor upon his *personal* knowl-

edge, but upon his scientific knowledge, and therefore was inadmissible. 1 Chand., 270.   3. The charge that if the parties made an express contract, and the hams delivered were the same in kind as those contracted for, then the transaction was the same as though under an implied warranty, giving the rule applicable to a sale by a manufacturer of a commodity manufactured by him for a particular purpose, was erroneous.   *Walton v. Cody,* 1 Wis., 420; *Dickson v. Zizinia,* 70 E. C. L., 600: *Cunningham v. Hall.,* 4 Allen, 268; 42 N. H., 165.   4. The modifications, by the judge, of the instructions asked by the defendants, changed the whole scope and meaning thereof, making the defendants liable, although the hams were all right when delivered, unless injured or rendered unsound by the *neglect* of the plaintiffs, which is not the law.   This is inconsistent with the preceding portion of the charge.   5. The assumption of the judge as to the temperature on shipboard was error; and his last instruction relative to the liability of the defendants for non-observance of their usual mode and manner in packing these hams, was gross error, and calculated to mislead the jury, their being no evidence whatever of such non-observance.   *Eldred v. Mich. Ins. Bank,* 9 Wallace, 553; 29 Iowa, 579; 20 How., 252–359. 6. The refusal to give the instruction asked by defendants, that the plaintiff must prove the contract alleged in his complaint, was error.   1 Parsons on Con., 477, and note; Benjamin on Sales, 29; 28 Cal., 65; 28 Barb., 485; 16 id., 315; 21 id., 82; 32 id., 268; 2 Rob., 35; 5 Seld., 528; 4 id., 289; 4 Duer, 45; 5 id., 389; 3 Bosw., 250; 6 id., 329; 1 Phil. Ev. C. H. & E.'s notes, 845, 240; 5 Mees. & Wells, 535.   7. The verdict is contrary to the evidence.

*Emmons & Hamilton,* for respondents:

The law of this case was settled on the former appeal, 27 Wis., 152.   The case has from the beginning proceeded upon the simple issue whether the hams were sound and merchantable when delivered, and the jury have decided that they were not.

DIXON, C. J., The objection that there was a variance between the allegations of the complaint and the proof, growing out of what is understood by persons engaged in the trade as the difference between cured hams and fresh packed ones, is too technical to merit serious consideration. If there was such variance, the defendants were not misled by it, and it was just one of the kind which the statute declares shall not be deemed material.

There was no error in overruling the objection to the question propounded to the witness Cudahay, "Assuming that the hams were for transportation to Lake Superior, and had been properly stowed in the vessel, and then again assuming that they had been properly cared for, ought they to have borne transportation to Lake Superior." This objection is attempted to be sustained upon two grounds: first, that the assumption that the hams "had been properly cared for," was unfounded, no evidence having been given in support of it; and second, that it was an improper question to put to an expert, the jury being as competent to judge of the matter as the witness was. Of the first ground of objection we have only to observe, that it is entirely unfounded in fact. There was evidence before the court and jury quite sufficient to justify the assumption for the purpose of obtaining the opinion of the witness. The testimony of the captain and mate of the vessel, quoted by counsel in their brief, was enough. The mate said it "was dry and cold," and he would "almost say, fresh meat would not spoil there"; he could not tell how far from the engine or boilers the hams were stowed, but the Houghton and Hancock freight and the bulkhead were between the hams and the engine and boiler. He also said he "could not say what was stowed around or above the hams; the hold was full; as near as I can remember, pork, beef, groceries and provisions in packages were on top of the tierces or near them." The captain said, "the hams were stowed away under the mate's direction. All the goods that were consigned to ports above Houghton were

stowed in the forward part of the hatch; the place of storage was cold; no danger of anything spoiling there; and was perfectly dry. With the hams were stowed provisions, groceries and fruit." Such is the testimony quoted by counsel themselves to establish this ground of objection. It is needless to say, it does not do so, but does establish the very opposite. The hams were shipped and the vessel made her trip from Milwaukee northward to Lake Superior during the last days of the month of November, when everybody knows that the weather is cold, almost wintry, upon the great lakes. But counsel say the captain did not know, nor did the mate, the degree of heat or cold in the hold of the steamer where the hams were stowed. Was it necessary that a thermometer should have been kept, and the exact degrees of cold at that place marked by it, in order to make the testimony of those witnesses competent and admissible, or to entitle it to be considered by the court and jury? Counsel seem to suppose that it was; but this court, in *Curtis v. The Chicago and Northwestern Railway Co.*, 18 Wis., 312, held that the state of the weather, as to heat or cold, was a matter of such common experience, that any witness of ordinary intelligence and having knowledge on the subject, was competent to give his opinion as to whether the weather was so cold on a day remembered by the witness that vegetables (potatoes) would be likely to freeze while in the cars of a railway company, or when deposited in its warehouse. This court wholly disagrees with the learned counsel as to the sufficiency of this ground of objection.

The other ground of the objection in effect is, that the subject matter of the inquiry did not so far partake of the nature of a science, requiring a course of previous habit or study in order to attain a knowledge of it, that the opinion of an adept was competent and admissible. The skill and special experience of the witness were well established; but it is said that the cause of the fermentation and souring of the hams, under the circumstances, was no question of science or skill whatever. Upon

this point we disagree also with the counsel who urge it. We think it follows from the views expressed by this court when this cause was before it on the first appeal (*Leopold v. Van Kirk*, 27 Wis., 152), that it was such a question, and that it was competent for the witness to give his opinion.

And the same answer is applicable to the objections to the two other questions put to the same witness; "Whether, in your judgment as an expert, the bloated appearance of the hams you inspected was produced or caused by the animal heat not having been out of them before they were packed;" and, on the re-direct examination: "Mr. Finch says, 'if hams were the properly packed;' I want to ask you if you would not have attributed the damage of these hams to the fact that they were not in a proper state for packing, in the case he puts?" It is true, the witness did not see the hams until some months after they were packed, and after they had been brought back from Lake Superior to Milwaukee. It is also true that the witness had expressed his views very doubtfully upon some questions which had been put to him, and as to others he had said he could give no positive opinion. All these circumstances were, however, known to the jury who heard him testify, and were doubtless considered by them in determining the degree of credit which should be given to his testimony. The witness did not, as counsel argue, show himself totally incompetent as an expert; and of the mode of his examination generally, it may be said that there was nothing exceptionable in it. In the examination of such witnesses, considerable latitude of inquiry and interrogation must necessarily be indulged, and counsel are not to be limited by any narrow or stringent rules either in obtaining the opinion of the witness upon all the facts disclosed, or in ascertaining his skill and competency, or the want of them, to give such opinion.

The next four errors assigned relate to the instructions of the court to the jury, and the fifth to a refusal to instruct as requested by the defendants. The charge of the court as a whole

will be found very nearly to harmonize with the rules laid down by this court for the government of the case when the cause was here on the former appeal. The jury were made distinctly to understand that, in order to sustain the action, they must be satisfied that the bad and unsound condition of the hams when they reached Lake Superior, must have proceeded from some defect existing in them, or in the manner of their preparation and packing, when they were sold and delivered by the defendants, and that it must not have arisen from any cause originating after such sale and delivery. The failure to do this was the principal error in the former charge, and for which the judgment was reversed. It was the leading and important point to be observed upon the trial of the cause. The first objection to the present charge is, that the judge erred in telling the jury that an express contract and warranty was the same as an implied warranty; and counsel labor zealously to demonstrate the falsity of the position, and do so very satisfactorily. But the difficulty with the objection is, that it is unfounded in fact. The judge did not so instruct the jury. All the judge meant was, that the express warranty which the evidence in the case tended to prove, was the same as the law would have implied upon a sale of the same articles under the same circumstances, if no such express warranty had been made. In this the judge was fully justified by the remarks of this court in the former opinion; and we think there could have been no misunderstanding on the part of the jury. If it was customary, or if it was expected, as it seems it was, that *freshly packed* hams would carry at that season of the year, by boat or vessel from Milwaukee to Lake Superior, receiving no injury from the transit, and arrive there in a sound and wholesome state, provided they were properly prepared and packed, and if the plaintiffs purchased the hams in question with a view to such transportation, and that fact was communicated by them to the defendant at the time of purchase, and the defendants sold and delivered the hams for that purpose, then the express warranty,

testified to by the plaintiffs *Aaron T. Leopold* and his brother *Samuel F.*, was in substance and effect the same as that which the law would have implied without it. With this understanding of that part of the charge, it was clearly unobjectionable, and sanctioned, as we have said, by the former decision of this court.

The second exception is to a portion of the charge which is more justly liable to criticism, and which, under some circumstances might have constituted error for which the judgment should be reversed. It is to that part where the court adopted the fourth, fifth and sixth points prepared by counsel for the defendants, but modified the fourth and fifth, by striking out the words "defect" and "event" in the former, and inserting in their places, respectively, the words "unsoundness" and "neglect," and also in the latter by striking out the words "defect thereto" and "or event," and substituting for them the words "unsoundness therein" and "or neglect of the plaintiffs." The two first changes were immaterial, being a matter of mere taste in the choice of words having the same meaning. But the other changes were more significant, as they indicated an opinion on the part of the court, that for subsequent unsoundness arising from some subsequent cause not connected with or attributable to *negligence* or *the negligence of the plaintiffs*, the defendants might be held responsible. This was inconsistent with other parts of the charge, and was clearly not the law. It was immaterial from what cause originating after the sale, unless it was the mere act of carrying in a careful and proper manner, against which the jury may have found the defendants warranted, the hams subsequently became unsound, so that such unsoundness was not traceable or produced by defects existing at the time of sale, either in the hams themselves or in the mode in which they were prepared or packed. In such case the defendants would not be liable. In such case it is immaterial how, or from what subsequent cause or event, the unsoundness arises, whether from mere accident, the op-

eration of the elements, or from the negligence of the purchaser or of a stranger; no responsibility therefor attaches to the seller. In this view, these modifications of the instructions seem to have been error, and, but for the other instructions clearly and correctly given upon the same point, and if it were not, also, for the fact that there was no evidence of subsequent accidental damage or other injury not arising from negligence, the error might have been fatal. But, as the case was, we think the defendants could not have been prejudiced, and therefore the error must be disregarded.

The exception to the remarks of the court to the jury, that they could not "lose sight of the fact that the packages were put on board November 14, of the temperature of the weather that ordinarily prevails at that season of the year, and that the temperature would be lower on shipboard in the open lake than on the shore," seems to have been quite uncalled for. The first was a fact undisputed in the case, and the truth of the other is demonstrated by common experience. If it be error for the court to allude to such well known circumstances in its instructions to a jury, it is something which this court has yet to learn.

And so of the exception to the instruction that "notwithstanding evidence of the defendants' usual manner of packing hams in the period embraced as to the hams in controversy, yet if the jury find from the evidence that the hams in controversy escaped the observance — whether by accident or otherwise — of such usual mode and manner, the defendants were liable for any non-observance." Counsel say there was no evidence that the hams in controversy escaped the observance, either by accident or otherwise. By this we suppose must be understood no positive or direct evidence of the fact. But proof of that kind was unnecessary. It was enough that the jury should find from proof of other facts and circumstances that the fact was so. It could be found from circumstantial evidence, which was all that plaintiffs were able to give.

The exception to the request to charge which was refused, has been disposed of in our remarks first made on the question of variance. That request was founded upon the supposed variance between the contract proved and that set out in the complaint.

The last error assigned is, that the verdict was against evidence. We need not dwell upon this, as there clearly was evidence by which the verdict was supported.

On examination of the whole case, therefore, we find no error for which the judgment should be reversed; and it must accordingly be affirmed.

*By the Court.* — Judgment affirmed.