HENRY MAURER, Respondent, *against* CHARLES H. BLISS
*et al.*, Appellants.

(Decided February 7th, 1887.)

Plaintiff contracted to manufacture for defendant fire-proof brick to be
used between wooden beams in the floor of defendant's building. Such
brick for use between iron beams had been manufactured before that
time, and their shape, quality, etc., were well known, but the use of
fire-proof brick between wooden beams was experimental. *Held,* that
plaintiff only warranted that the bricks manufactured under such con-
tract were free from defects produced by the manufacture itself, and
from latent defects, and reasonably good of their kind, and did not
warrant the success of the experiment, especially as it appeared that
its failure was due to the want of uniformity of the thickness of the
beams and the spaces between them, and the failure of defendant to
nail strips on the beams.

APPEAL from a judgment of this court entered upon the
decision of the judge on the trial of a proceeding to fore-
close a mechanic's lien.

The facts are stated in the opinion.

*Stephen H. Olin,* for appellants.

*John A. Foster,* for respondent.

BOOKSTAVER, J. — Appeal from a judgment entered in
favor of the plaintiff, upon the findings of the court on the
trial of a proceeding to foreclose a mechanic's lien for
material furnished.

The material consisted of three varieties of fire-proof
brick. One kind was to be used for partitions; another, for
ceilings between iron beams; and the third, for ceilings
between wooden beams. There is no dispute either as to
the price or quantity of the first and second kinds fur-
nished. The difference arises on the third kind, or those
to be used between wooden beams.

The sole contention is, as to what the contract between

the parties, in reference to these bricks, really was. Plaintiff claims that the defendant gave an absolute order for 20,000 feet of brick, to be used between wooden beams, in the same way he did for the other brick, and defendant denies that he gave the order absolutely; but claims that the agreement was, that the plaintiff should manufacture some for experimental purposes, and that he should try them, and then use them if he found the experiment successful; but that he was not bound to take any specific quantity, if the experiment did not succeed.

This presented a pure question of fact, to be determined on the evidence presented. The learned judge, having all the witnesses before him, had a better opportunity to determine what weight should be attached to the evidence of each, and what inferences should be drawn from their testimony, based on their character and manner of giving evidence, as observed by him, than we can possibly have. On all the testimony he came to the conclusion that plaintiff's version of the agreement was correct.

We have examined the testimony with care and find it very conflicting; but there is undoubtedly abundant evidence to support the findings; indeed, we think the weight of evidence is with the plaintiff. Having arrived at this conclusion, we do not think it necessary to give our reasons at length, as we would, if we felt constrained to reverse the judgment.

But defendant claims there was an implied warranty by the plaintiff, that the brick should be reasonably fit for use between wooden beams; that the implied warranty was broken, and that the plaintiff cannot recover for the fire-bricks delivered for such purpose.

Where a manufacturer agrees to make a thing for a particular known purpose, there is an implied warranty that it shall be reasonably fit for that purpose (Benjamin on Sales § 657; *Gautier* v. *Douglass Manuf. Co.*, 13 Hun 514; *Gurney* v. *At. & G. W. R. Co.*, 58 N. Y. 358; *Jones* v. *Just*, L. R. 3 Q. B. 197); that is, it must be free from defects produced by the manufacturing process itself (*Hoe* v. *Sanborn*, 21

N. Y. 552); and free from latent defects, not visible to the vendee (see *Leopold* v. *Vankirk*, 27 Wis. 152; *Brinton* v. *Davis*, 8 Blackf. 317, 318; *Kellogg Bridge Co.* v. *Hamilton*, 110 U. S. 108; where the law on this subject is carefully reviewed). But where a well-known article is to be manufactured for experimental purposes, we think that the utmost that can be claimed, is, that it shall be reasonably good of its kind.

At the time of making the agreement to manufacture the brick in question, none had ever been used between wooden beams, so far as the parties knew; but bricks for use between iron beams had been manufactured before that time, and their shape, quality, etc., were well known. The defendant determined to try the experiment of using similar brick between wooden beams, and the learned judge has found that he ordered unconditionally 20,000 feet of fire-brick for that purpose. Under such an agreement, all that the manufacturer could be required to furnish, was reasonably good fire-bricks; that is, bricks made of proper material, properly manufactured, with proper flanges, and reasonably uniform in shape and size, and free from latent defects, and defects in manufacture.

The defendant does not contend that the bricks delivered were not reasonably good, in any of these respects, or that there were latent defects, which he could not discover on inspection; but that the experiment failed because plaintiff did not supply with the bricks a sufficient variety of keys of different sizes. Different sized keys were rendered necessary by the varying sizes of the beams, and the spaces between them. Defendant furnished plaintiff with the plans of his building, and, from these plans, he took measurements for the bricks; and made and furnished at least five different sizes of keys, presumably enough to fit between the beams, had they been uniformly laid. Defendant testified that he laid the beams at as uniform a distance from centre to centre as possible; but admits that the beams were not uniform in depth and thickness, and that the spaces between them varied from one to two inches.

It also appears, from the evidence, that in order to lay the brick properly between these beams, it was necessary to nail a strip of wood to the beam, at a uniform distance; and that defendant should have had this strip bevelled, and was so informed by plaintiff's agent. Over these conditions the plaintiff had no control, but the defendant had. The want of uniformity in the thickness of the beams, the varying spaces between them, and defendant's omission to bevel the wooden strip, were the chief causes of the failure of the experiment, and involved so much labor in adjusting the brick, that the cost became too great to admit of their use for the purpose intended.

Defendant did not notify the plaintiff that a greater variety in the sizes of the keys was needed; nor did he request him to furnish them, as he should have done, under this state of facts. We think the plaintiff had a right to assume that the beams would be of uniform thickness, and laid with the same uniformity that iron beams were, and that he was not required to furnish a greater variety of keys, until requested so to do.

Under the circumstances, to relieve the defendant from paying the agreed price of the bricks furnished, we would have to hold, not only that the plaintiff warranted their quality, but also the success of the experiment, which would be unreasonable.

As stated at the outset, this proceeding is brought to foreclose a mechanic's lien. The lien is acquired by filing the notice prescribed by section 4 of the Mechanic's Lien Law (L. 1885 c. 342), and dates from the filing of the notice. This must contain " the nature and amount of . . . the material furnished," if the lien is for material.

Under a similiar provision of the former law, this court has held that such a notice cannot be amended (*Conklin* v. *Wood*, 3 E. D. Smith 662); also that the amount must be stated, and judgment cannot be rendered for more than the amount claimed (*Protection Union* v. *Nixon*, 1 E. D. Smith 671; *Lutz* v. *Ely*, 3 E. D. Smith 621).

The notice filed in this proceeding states the amount

claimed to be $2,024.75; so did the bill of particulars, and the complaint also demanded judgment for that sum. Through some oversight or error in the calculation, the judgment rendered was for $2,248.25, or $223.50 more than the amount stated in the lien. Even if we had the power to amend the notice and the pleadings, we have looked in vain for evidence to support this excess over the amount claimed in the lien.

The judgment must therefore be reduced by $223.50, as of the date of its entry, together with any interest that may have been computed on that sum, and as thus reduced, should be affirmed, without costs of this appeal to either party as against the other.

LARREMORE, Ch. J., concurred.

J. F. DALY, J., dissented.

Judgment modified, and as modified, affirmed.