of dower is not affected by the judgment of divorce. Laws 1880, c. 178; Code Civ. Proc. § 1759, subd. 4. While the statute provides that in case of a divorce dissolving the marriage contract for the misconduct of the wife she shall not be endowed (2 R. S. .c. 1, tit. 3, § 8; Real Property Law, § 196), there is no provision in our statutes that, if she obtains a divorce for the misconduct of her husband, her dower shall be barred; but, as we have seen, there is an express declaration to the contrary. There are other ways in which the right of dower may be barred, forfeited, or released, but they have no relation to the question here.

It is, however, further contended that section 1759 of the Code of Civil Procedure does not apply because the marriage in our state may only be dissolved upon the ground of adultery, and a divorce obtained upon any other ground is therefore not within that provision. That is to say, if the judgment is obtained in this state upon the ground of adultery, the wife's right of dower is not affected thereby, but if obtained in another state upon other grounds, although sufficient by the laws of that state, for instance, such as desertion, she loses her right of dower whether she remarries or not. But the statutes referred to make no such distinction, and I think none exists in the law as declared by the courts of this state.

I am of the opinion that the demurrer was properly overruled, and that the interlocutory judgment entered thereon should be affirmed, with costs, with leave to plead over upon the usual terms. All concur.

---

(71 Misc. Rep. 2.)

### FISH v. ANSTEY CONST. CO. et al.

(Supreme Court, Trial Term, Kings County. February, 1911.)

1. MORTGAGES (§ 151\*) — PRIORITY — MECHANIC'S LIEN — SUBSTITUTED MORTGAGE.

Where the holder of a mortgage on a tract of land releases it, and takes new mortgages for the same indebtedness from purchasers of the tract, such new mortgages being on lots into which the tract is subdivided and being expressed to be purchase money mortgages, there is a mere substitution of securities, and the new mortgages have the same priority over mechanics' liens as the original mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 307–336; Dec. Dig. § 151.\*]

2. MECHANICS' LIENS (§ 137\*)—NOTICE—DESIGNATION OF PARTIES.

One filing a notice of mechanic's lien is put on inquiry as to the true ownership of the premises as disclosed by the records, and a notice filed only against a vendee in possession under an executory contract of sale acquires no lien against the vendor's interest.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 225–233; Dec. Dig. § 137.\*]

3. MECHANICS' LIENS (§ 158\*)—NOTICE—AMENDMENT.

An amendment of a notice of mechanic's lien, so as to cover the interest of the vendor in an executory contract of sale and of mortgagees, cannot be made on the trial of an action to foreclose the mortgages, where the time to file notices has expired.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 275–278; Dec. Dig. § 158.\*]

---

Action by Henry E. Fish against the Anstey Construction Company and others to foreclose a mortgage. Judgment for plaintiff.

G. H. Brevillier, for plaintiff.

Sidney F. Strongin (G. M. Moscowitz, of counsel), for defendant Dangler.

M. V. Dorney (G. M. Moscowitz, of counsel), for defendant Trudder.

PUTNAM, J. Action to foreclose mortgages on seventeen lots on East Eight street, Brooklyn.

In 1905 two mortgages were placed on a tract of land including the lots here involved, one dated April 5, 1905, to Edward L. Swift, for $25,000, and the other dated November 13, 1905, to Michael L. McLaughlin, for $8,200, which was subsequently reduced to $6,200. In January, 1908, Lake Shore Realty Company, incorporated under the laws of New York, purchased this property subject to the two mortgages above mentioned. About May, 1908, the holders of said mortgages threatened to foreclose. As the Lake Shore Company was then unable to meet this demand, certain of the stockholders of that company individually advanced the funds necessary to purchase said mortgages, and in May and July, 1908, had them assigned to plaintiff, who executed two declarations of trust in favor of the contributors to this fund in proportion to the amount of their respective contributions.

The Lake Shore Company on August 31, 1909, entered into an agreement with defendant Anstey Construction Company, which provided for the sale to said defendant of the tract comprising these 17 lots at the price of $950 for each lot, payable $150 in cash, and the balance in stated installments, to be secured by purchase-money mortgages. The Anstey Company was, however, to erect upon each of the several lots a house as described. The Anstey Company was to get a building loan to be secured by mortgage upon said lots and buildings, which should be given a priority. The above cash payment of $150 was to be paid out of the first installment on the building loan, and, upon receiving such payment, a full covenant deed of the several lots should be executed by the vendor. The title to all or any of the lots could be taken by the Anstey Company, at any time, upon 15 days' notice, but, in any event, was to be closed on or before November 15, 1909. The agreement made no reference to the time when possession should be taken. It was not filed or publicly recorded.

The Anstey Company delayed performing the covenants on its part until February, 1910, although in the meantime there was no formal extension of the agreement. The building loans were effected by contracts dated February 28, 1910, and the lots were conveyed by the Lake Shore Company to the Anstey Company by deeds dated February 21, 1910. This plaintiff, under date of February 23, 1910, released the lots so conveyed from lien of the $25,000 and $6,200 mortgages; and the Anstey Company then gave plaintiff the 17 mortgages here involved, each dated February 21,

1910, and stated to be for purchase money, but to be subject to the building loan mortgages. In the meantime, however, upon the employment of the Anstey Company, defendant Dangler about November 1, 1909, began the brick work on the erection of buildings upon said lots, and defendant Trudden on December 17, 1909, began to supply cut stone therefor. On March 16 and 17, 1910, respectively, they filed notices of lien, in which the Anstey Construction Company alone was named as the owner of the property against whose interest a lien was claimed, also as the person by whom the lienors were employed, and at whose request the materials were furnished. Upon default by the Anstey Construction Company, this suit was brought to foreclose the 17 mortgages. Defendants Dangler and Trudden alone defend, claiming a priority for their liens.

[1] The mortgages for $25,000 and $6,200, placed upon the premises in 1905, which were assumed by the Lake Shore Company when it purchased said premises in January, 1908, were a first lien and prior to the liens of defendants Dangler and Trudden. When these defendants placed improvements upon the property, they were charged with notice of these mortgages. The persons, through plaintiff as trustee, who advanced in good faith the funds necessary to prevent the threatened foreclosure of these mortgages and took an assignment to plaintiff as trustee for them, did not extinguish the security, which was kept alive with all the rights of the former mortgagees. When in February, 1910, plaintiff released from the lien of said mortgages these lots, and in lieu thereof took from the Anstey Company these seventeen mortgages, it was a mere substitution of securities.

[2] In November and December, 1909, the Lake Shore Realty Company was the record owner of the premises. The defendant lienors, therefore, when they began their work and furnished materials at the request of the Anstey Company, were put upon inquiry as to the true owner of the premises (Spruck v. McRoberts, 139 N. Y. 193, 34 N. E. 896), and were chargeable with notice that the Anstey Company was not the owner. Their liens, filed in March, 1910, were against the interest only of the Anstey Company, and did not become operative until they filed the notices of lien. Lien Law (Consol Laws 1909, c. 33) § 3. They made no attempt to file any lien against any interest in the property of the plaintiff or of the Lake Shore Company.

[3] Upon this trial, a motion was made to amend the notice of lien so as to claim against the interest of the plaintiff and the Lake Shore Company. The matter is statutory, and the notice is a prerequisite to the lien. After the expiration of the statutory period allowed for filing notices of lien, the court is without power to amend or reform a notice of lien in the manner here attempted. Maurer v. Bliss, 14 Daly, 150; affirmed without opinion, 116 N. Y. 665, 22 N. E. 1135; 27 Cyc. 206.

Having failed to name other interests than the Anstey Company, these lienors cannot now assert a lien upon the interest of the Lake Shore Company; and they cannot claim against the plain-

tiff, even if the persons he represents, who are interested in the mortgages, are chargeable with knowledge or notice of the contracts and building enterprises of the Lake Shore Company.

Plaintiff therefore is entitled to a decree of foreclosure and sale. Judgment for plaintiff.